Filed 9/15/23  P. v. Caldwell CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CORNELIUS CALDWELL,<br><br>    Defendant and Appellant. | B320850<br><br>(Los Angeles County Super. Ct. No. BA001856) |

APPEAL from an order of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Cornelius Caldwell (defendant) pled no contest to second degree murder in 1990. Many years later, defendant petitioned for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1] Following an evidentiary hearing, the trial court found defendant was the murder victim's actual killer and denied the petition. We are asked to decide whether the trial court's consideration of factual summaries in prior appellate opinions and a stipulation made "for purposes of a preliminary hearing only" require reversal.

## I. BACKGROUND

In 1989, the Los Angeles County District Attorney charged defendant with "willfully, unlawfully, and with malice aforethought murder[ing] Jane Doe, aka Charlisa Carlyn Clark, a human being." Defendant pled no contest to second degree murder in May 1990.

Less than a month later, at sentencing, defendant sought to withdraw his plea because he "was under heavy medication last time" and "wasn't aware of what [he] was doing." The trial court denied the motion to set aside the plea and sentenced defendant to 15 years to life in state prison. Plaintiff challenged the trial court's denial of his motion to set aside the plea on direct appeal, and another panel of this court affirmed the judgment in 1991. (*People v. Caldwell* (Sept. 11, 1991, B053741 [nonpub. opn.] (*Caldwell I*).)

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

Defendant filed a section 1172.6 petition for resentencing in 2019.[2] The trial court summarily denied the petition without appointing counsel because it found defendant was the actual killer and accordingly ineligible for relief. We reversed and remanded for the trial court to appoint counsel and to conduct further proceedings in accordance with section 1172.6. (*People v. Caldwell* (Feb. 11, 2021, B299017 [nonpub. opn.] (*Caldwell II*).)

On remand, the trial court appointed counsel for defendant and held an evidentiary hearing. Neither the prosecution nor defendant presented new evidence. The trial court indicated it was "going to consider" documents filed by defendant and the prosecution, which included the opinions in *Caldwell I* and *Caldwell II*, a preliminary hearing transcript, plea and sentencing transcripts, and a probation officer's report. The trial court found defendant was the victim's actual killer and thus ineligible for resentencing under section 1172.6.

Because the issues raised on appeal implicate the trial court's consideration of the prior appellate opinions and a portion of the preliminary hearing transcript, we shall summarize the facts as set forth in each of these documents and the basis of the trial court's "actual killer" finding.

### A. The Preliminary Hearing Transcript

Tyrone West (West) testified he was driving one night in 1989 when he saw defendant standing on a corner "looking kind of strange." West had known defendant for about two weeks.

---

[2] Defendant filed a duplicative petition in 2022, which the trial court addressed in its ultimate ruling on the original petition. The appellate record includes only the 2022 petition.

West rolled down his window to ask defendant what was wrong and, when defendant did not reply, West parked and repeated his question. Defendant did not answer and walked into a house. West followed defendant, and defendant told him to shut the door. Both men sat down, and West again asked defendant what was wrong. Defendant told West "there was a body back there." West told defendant he did not believe him, and defendant led him to a bedroom. A body was on the floor "inside of a bag, trash bag wrapped around the leg, and [a] sheet was tied over the trash bag and the feet were out." West started to bend down to check for a pulse, but "felt that [he] shouldn't." He "didn't see any breathing, didn't see any motion, body movements or anything."

West asked defendant whether the body belonged to his girlfriend. Defendant replied, "It's just a motherfucking strawberry." When West asked whether there had been an argument, defendant told him "things got out of hand" and he "broke out with a full nelson." West testified that defendant "demonstrated the way he had [the victim] by the neck," and West demonstrated for the court.

West told defendant he had committed a serious crime and asked him if he would like to pray. The two men "got down on [their] knees" and defendant said, "Lord, please forgive me. Let her rest in peace, and please give me a place to hide her body."

Defendant spoke to West about his plans for disposing of the body, first proposing to "find some bushes to put her in" and subsequently saying "that a better idea was a trash can around the corner." West decided he "had to leave" at this point, and as he walked out the door defendant said, "I have to get this . . . mother fucking shit out of here before it starts stinking

4

up the place." West reported the encounter to law enforcement the next day.

Vernice Jefferson (Jefferson) testified she was taking out her trash on the same block the following morning when she discovered a body near a dumpster. The body was in a box covered in plastic and a sheet. Jefferson called the police around 7:00 a.m.

Defendant stipulated "for purposes of a preliminary hearing only" that "Mr. Christopher Rogers be deemed to have been called as a witness, qualified as a surgeon who specializes in forensic autopsy surgery and that Mr. Rogers be deemed to have testified that he examined the body . . . and found the cause of death of that body to be strangulation."

### B. The Prior Appellate Opinions

Because defendant challenged only the denial of his motion to withdraw his plea on direct appeal, the opinion in *Caldwell I* includes a fairly brief summary of the facts: "The record reflects that on July 27, 1989, [defendant] admitted to an acquaintance, Tyrone West, that he had just killed a woman. He brought West to his bedroom and showed him a body that was partially wrapped in a plastic trash bag. West did not see the woman's face and asked how the killing occurred. [Defendant] said, '[t]hings just got out of hand' and demonstrated how he had applied 'a full nelson' around the woman's neck. At West's suggestion, they knelt and prayed. [Defendant] prayed, 'Lord, please forgive me. Let her rest in peace, and please give me a place to hide her body.' [Defendant] then began to talk about his ideas for disposing of the body, and West left because he did not want to become further involved. The next day, after a box

5

containing the woman's body was discovered near an apartment building dumpster, West decided to report the incident to police. An examination of the body revealed the woman had died of strangulation."

After summarizing the facts of the crime, the *Caldwell I* opinion notes the trial court's incredulous response when defendant moved to withdraw his plea: "Were you under heavy medication when you confessed at an Alcoholics Anonymous meeting, and when you confessed to the probation officer?" *Caldwell I* explained in a footnote that "[t]his information about [defendant's] admitting to the killing was contained in the probation report, which also revealed that [defendant] stated 'essentially that the victim was a prostitute who got him angry when she [was] leaving with his money because he did not have enough for the sex act that he enlisted her for.'"

In *Caldwell II*, a single-sentence summary of the facts was all that was necessary: "According to testimony at defendant's preliminary hearing, defendant's then-girlfriend was found strangled to death by a dumpster and defendant told an acquaintance (who saw the dead body before it was moved to the dumpster area) that 'things just got out of hand' and he needed to find a place to hide the body."

C.    *The Section 1172.6 Court's "Actual Killer" Finding*
The trial court prefaced its summary of the facts with the explanation that it was "reading off of [the prosecution's] opposition."  The trial court stated "defendant showed this person, Mr. West, the victim's corpse, which was wrapped up in a sheet and trash bag.  And when Mr. West asked the defendant if the dead woman was [defendant's] girlfriend, [his] response was,

6

'It's just a motherfucking strawberry.'" [¶] Mr. West asked how the killing occurred, and the defendant explained thoroughly how he killed her, what he did, how he did it, et cetera. And he only wanted to get some assistance to get the body out because he didn't want to contend with the smell of the rotting of the corpse. [¶] For all intents and purposes, this is how this murder occurred. In that description, the defendant also indicated how he strangled her, how he wrapped her up, how he put her wherever he put her, et cetera."

## II. DISCUSSION

Defendant contends the trial court improperly relied on the prior appellate opinions and the stipulation made at the preliminary hearing in finding him ineligible for resentencing.[3] Any error was harmless. The brief factual summaries included in the prior appellate opinions accurately reflect the preliminary hearing testimony in all material respects. Additional references to the sentencing hearing and probation report in *Caldwell I* did not factor into the trial court's analysis. The preliminary hearing stipulation concerning the cause of death is not, as defendant contends, necessary to establish the corpus delicti of murder because there is ample circumstantial evidence that the victim's death was caused by a criminal agency.

---

[3] Insofar as defendant additionally contends the trial court impermissibly considered other materials proffered by the People at the order to show cause hearing, the contention is immaterial—there is no pertinent information in the other materials that the trial court relied on that is not reflected in the preliminary hearing transcript.

7

*A.	Legal Framework and Standard of Review*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added [former] section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.  [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

If the trial court determines a prima facie showing for relief has been made, the trial court must issue an order to show cause. (§ 1172.6, subd. (c).)  The trial court must ordinarily hold a hearing on the order to show cause at which the prosecution bears the burden to prove beyond a reasonable doubt that the defendant is guilty of murder under amended section 188 or 189 as amended by Senate Bill 1437.  (§ 1172.6, subd. (d)(3).)

The Evidence Code governs at the hearing, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another

8

exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

On appeal from the denial of a petition for resentencing under section 1172.6, we review the trial court's factual findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

### B. *Any Error Was Harmless*

We have doubts that there was any error in considering the preliminary hearing stipulation: section 1172.6 expressly permits a trial court to consider "stipulated evidence" previously admitted at "any prior hearing." Separately, the question of what a section 1172.6 court may consider when relying on a prior appellate opinion (§ 1172.6, subd. (d)(3)) has not been definitively resolved. We shall assume for argument's sake, however, that neither source of information should have been considered. Reversal still is not required because it is not reasonably probable defendant would otherwise have obtained a more favorable outcome in the absence of such consideration. (*People v. Myles* (2021) 69 Cal.App.5th 688, 706, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; see also *Lewis*, *supra*, 11 Cal.5th at 973.)

As we have already indicated, the brief factual sketches in the prior appellate opinions faithfully reflect the testimony given at the preliminary hearing. There can accordingly be no prejudicial error in considering the facts of the offense developed by that testimony and summarized in the opinions even if those facts do not qualify as being part of the "procedural history of the case." (§ 1172.6, subd. (d)(3).) Rather, the only colorable

9

argument that the trial court's consideration of the prior appellate opinions was prejudicial is derivative of defendant's other argument: that the section 1172.6 court should not have considered the stipulation concerning cause of death that was part of the preliminary hearing evidence.

Defendant believes that, absent this stipulation, there is insufficient corpus delicti evidence, i.e., that the victim's death occurred as a result of a criminal agency. Defendant acknowledges "the preliminary hearing evidence . . . established . . . [he] admitted assaulting the victim with a full nelson type hold" and she died, but he maintains that, "[a]bsent the stipulation, the cause of death . . . is unknown." These contentions are unavailing.

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169; *People v. Huynh* (2012) 212 Cal.App.4th 285, 300 ["'In a prosecution for murder, as in any other criminal case, the corpus delicti—i.e., death caused by a criminal agency—must be established independently of the extrajudicial statements, confessions or admissions of the defendant'"].) "This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened. [Citations.]" (*Alvarez*, *supra*, at 1169.)

The independent evidence "may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an

inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.]" (*Alvarez, supra,* 27 Cal.4th at 1171.) Our Supreme Court has emphasized that "'[t]he amount of independent proof of a crime required [to satisfy the corpus delicti rule] is quite small" and the prosecution "need only make 'some indication that the charged crime actually happened,' so as to ensure 'that the accused is not admitting to a crime that never occurred.' [Citation.]" (*People v. Krebs* (2019) 8 Cal.5th 265, 317; *People v. Gonzalez* (2021) 12 Cal.5th 367, 382 ["Given the low quantum of proof that is required, we are satisfied that the prosecution provided the "'minimal'" amount of independent evidence necessary to satisfy the corpus delicti rule"].)

Under the governing legal standard, there was ample circumstantial evidence here that the victim's death resulted from a criminal act. Defendant showed West the body wrapped in a trash bag in a bedroom, defendant did not report the death, and the body was ultimately discovered near a dumpster. In *Huynh, supra,* the Court of Appeal held that "the fact that [a victim's] body was found in an alley wrapped in a blanket furnishes at least a prima facie showing of criminal agency, inasmuch as the bodies of victims of accidental deaths typically would not be disposed of in this manner. [Citation.]" (*Huynh, supra,* 212 Cal.App.4th at 301.) The inference is sound, and it applies with equal force here. Although other inferences are possible, the corpus delicti rule does not require that such alternatives be ruled out. (*Alvarez, supra,* 27 Cal.4th at 1171.)

With the corpus delicti rule satisfied, defendant's statements to West are sufficient to support the trial court's conclusion that he was the actual killer and thus ineligible for relief under section 1172.6. Contrary to defendant's argument,

11

the fact that West "never testified that [defendant] affirmatively told him he killed the victim" does not undermine the substantial evidence supporting the trial court's finding. Indeed, such a statement would have been redundant. Defendant led West to the victim's motionless body wrapped in a trash bag and explained that he had held her by the neck when "things got out of hand." He subsequently prayed for forgiveness and a place to hide the body. These statements and the attendant circumstances are enough; defendant did not have to pronounce his responsibility for the killing "with the discrimination of an Oxford don" (*Davis v. United States* (1994) 512 U.S. 452, 476 (conc. opn. of Souter, J.)).

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.